MR. JUSTICE SHEA
concurring and dissenting:
Although I agree with the majority’s decision on the restitution issue, I would order a new trial because the prosecutor not only violated the trial court’s order, but in doing so, he twice misstated the law to the jury. In addition, I feel that the Chief Justice, in his dissent to the restitution holding, has overlooked some basic reasons why a restitution order, to be acceptable, should be supported by the evidence.
In holding the prosecutor’s violation of the trial court’s order to be harmless error, the majority has simply issued a bland warning not to do it again. I feel that the only proper remedy in light of this flagrant violation of the court’s order is to order a new trial. This is the only way in which the prosecutors will know that they cannot violate a trial court’s order and the defendant’s rights with impunity. The prosecutor’s actions were designed to bring the information to the jury’s attention which the court held could not be done.
Further, the information brought before the jury was incorrect. The prosecutor supplied the doctor and the jury with the forbidden information by asking the doctor if he was “familiar with the fact that .10 is the legal rate in Montana intoxication.” This information, couched in the form of a question, not only violated the court’s order, but it was also incorrect. A .10 percent blood alcohol level is not the legal rate of intoxication in Montana; rather, it gives rise to a presumption that the defendant was under the influence of alcohol. (Section 61-8-401(3Xc), MCA.) The jury could well have believed, because of this misinformation that .10 percent blood alcohol level means that a person, under Montana law, is intoxicated. And the prosecutor’s final argument to the jury again pounded this point home by arguing that a .10 percent blood alcohol level was the “legal rate of intoxication in Montana” and that the defendant’s blood alcohol count of .17 percent “is almost twice the legal rate of intoxication in the State of Montana under our laws.”
*406 It is insufficient for the majority to pass off these flagrant violations and misstatements of the law by a statement that “. . . there was already sufficient evidence in the testimony of Mr. Anderson as to what .17% alcohol meant . . . .” The undeniable fact is that the prosecutor not only twice violated the court’s order but in doing so also misstated the effect in Montana of a .10 percent blood alcohol level. Because the prosecutor twice stated that a .10 percent blood alcohol level is the “legal rate of intoxication” in this state, the jury was left with the impression that as a matter of law, defendant was intoxicated. We have then two violations of a court order coupled with two misstatements of the law on which the prosecutor clearly intended the jury to rely. I cannot state, beyond a reasonable doubt, that these misstatements of the law did not contribute to the defendant’s conviction. See Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Therefore, I would vacate the judgment and order a new trial.
I feel some comment on the restitution issue is necessary because the dissent of Chief Justice Haswell seems to indicate that in imposing guidelines for restitution, this Court has ar-, rogated to itself a power which belongs only to the legislature.
In permitting a district court to impose restitution as a condition of a deferred sentence (section 46-18-201(lXaXiv), MCA, the legislature has utterly failed to give any guidelines about when restitution is to be considered an option. The dissent suggests that only the legislature can provide guidelines for restitution, and that any district court judgment imposing restitution is protected by the disputable presumptions contained in section 26-1-602, MCA. Subsection 15 of this statute provides a disputable presumption “that official duty has been regularly performed.” And subsection (17) provides a disputable presumption “that a judicial record, when not conclusive, does still correctly determine or set forth the rights of the parties.” I have no quarrel with these presumptions but they do not address the problems involved here. Translated, these presumptions mean only that the party taking the appeal must convince at least a majority of this Court that the trial court was wrong. Or put another way, it means that the *407 party defending the appeal does not have the burden of going forward to establish that the judgment is correct.
I do not think the legislature intended that district courts order restitution in any amount they desire; I do think that the legislature would consider it a laudable goal to have an evidentiary record in support of any restitution ordered by the district court. Otherwise, an order would be nothing less than a fiat, based only on the personal predilections of the sentencing court. And certainly this Court, in the exercise of its appellate jurisdiction, has the right to determine whether an order of the sentencing court is supported by the evidence.
Restitution can be likened to a civil judgment for damages. Each element of damages must be supported by the evidentiary record. And so must each factor on which restitution is based. In permitting a trial court to order restitution, it can hardly be said that the legislature intended that the district court have plenary power to decide the issue without benefit of appellate review.
By analogy, the legislature has created a cause of action for wrongful death (section 27-1-513, MCA), but the elements of recoverable damages are not listed in this statute or in any other statute. Instead, this Court, by its decisions, has given meaning to the cause of action by setting forth in various decisions the items of damages that are recoverable. I see our function as being no different here, where we are simply setting forth the guidelines for district courts to follow when restitution is considered as a sentencing option. This Court has followed a clear, if unsteady, policy of requiring the sentencing courts to set forth their reasons for their sentences. Our failure to require sentencing courts to justify their sentences would eventually result in these courts never giving reasons for their decisions. These courts would simply fall back on the so-called presumptions of regularity contained in sections 26-1-602(15) and (17), MCA, as their justification for not explaining their decisions.
This Court was faced with the situation of determining not whether restitution was proper as a principle, but whether the amount of restitution was proper under the facts. As the *408 majority opinion states: “The record here does not show the actual damages caused to each of the three girls, and we are not able to determine if the restitution could exceed the actual damages.” Clearly, then, it is proper for this Court to remand for resentencing, and in doing so, to set forth guidelines for the district courts to use when ordering restitution. These guidelines will help the district court, the public will have confidence that the function of restitution is not being abused, and these guidelines will certainly aid this Court in performing its function of appellate review.